316 Ga. 691
FINAL COPY

S23A0531.  ROUNTREE v. THE STATE.

ELLINGTON, Justice.

Quavion S. Rountree appeals his conviction for malice murder

in connection with the shooting death of Anahitdeep Singh Sandhu.[1]

Rountree contends that the trial court erred in failing to charge the

jury on voluntary manslaughter and on mutual combat. Because

---

[1] Sandhu was killed on April 28, 2019. On May 7, 2019, a Houston County grand jury indicted Rountree and Delvin Ross for malice murder, felony murder, and aggravated assault. Rountree was tried separately before a jury from June 21 to 23, 2021, and was found guilty on all counts. As of the time of Rountree's trial, the charges against Ross had not been resolved. On July 7, 2021, Rountree was sentenced to serve life in prison for malice murder. With respect to the remaining counts, the State accurately observes that the trial court purported to merge the felony murder count into the count of malice murder, but the felony murder count was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993); *Calmer v. State*, 309 Ga. 368, 368 n.1 (846 SE2d 40) (2020). And as the District Attorney correctly recognizes, although the trial court purported to merge the aggravated assault count into the felony murder count, the aggravated assault count actually merged into the malice murder count for sentencing. See *Malcolm*, 263 Ga. at 373-374 (5); *Calmer*, 309 Ga. at 368 n.1. Rountree filed a timely motion for a new trial, which he amended on March 24, 2022. After a hearing on October 4, 2022, the trial court denied the amended motion for a new trial on November 8, 2022. Rountree filed a timely notice of appeal, and the case was docketed in this Court to the April 2023 term and submitted for a decision on the briefs.

Rountree has failed to carry his burden of showing plain error, we affirm.

The evidence submitted at trial shows the following.[2] On April 28, 2019, Sandhu and his fellow United States Marine, Desmen Worley, were on furlough, visiting Worley's hometown and staying at Grimaldi Miro's apartment in the same apartment complex where Rountree lived. That afternoon, Sandhu and Miro walked to Rountree's apartment for the purpose of trading a prescription medication containing codeine for ecstasy pills. When Rountree said that he did not have any pills, all of them walked out of the apartment. Rountree said that he considered Sandhu a "threat," although Miro did not see Sandhu flash a gun or do anything that

---

[2] Rountree makes a passing, one-sentence request that this Court review the sufficiency of the evidence. However, he never argues or even asserts that the evidence supporting his conviction was insufficient. Thus, Rountree has failed to carry his burden on appeal of showing that the evidence presented at trial was insufficient to support his conviction. See *Charles v. State*, 315 Ga. 651, 654-655 (2) (884 SE2d 363) (2023) (holding that the appellant had not carried his burden of showing that the evidence was insufficient, because he had "not articulated why he contends that the trial evidence was insufficient to support his convictions, much less formulated an argument showing that the trial evidence failed to prove an essential element of any crime charged beyond a reasonable doubt").

2

was threatening. Sandhu and Miro then walked back to Miro's apartment.

Rountree called Delvin Ross, walked away from his apartment, and told Miro and others that he "felt like doing something stupid." They could tell Rountree was "angry" and "upset," they tried to reason with him and calm him down, and they told him that Sandhu "didn't mean . . . any type of disrespect." Ross drove up and got out of his car, and Rountree grabbed a pistol from Ross and chambered a round. When Ross and Miro tried to hold Rountree back, he threatened to shoot one of them.

Rountree went to Miro's apartment, and Sandhu came out and stood in the doorway. Rountree pointed Ross's pistol at Sandhu and told him to turn over the gun and the prescription drug that he had. When Sandhu lowered his hands to reach for the gun in his waistband, Rountree shot him several times, fatally wounding him. Several eyewitnesses testified that Rountree shot Sandhu, and they gave other testimony consistent with the preceding summary of the evidence.

Rountree testified that he was in his apartment with his two children and his fiancée when Sandhu and Miro came over; that he saw Sandhu had a firearm; that he feared for his life and his children's lives; that he ushered Sandhu and Miro outside where Sandhu used racial epithets and asked Rountree if he "want[ed] to do this out here or inside," which Rountree took as a threat; that he thought they were trying to rob him; that he called Ross and, when Ross arrived, took the pistol from him and chambered a round; that he went to tell Sandhu to stay away from his apartment; and that he shot Sandhu after he saw Sandhu reach for his gun. Based on this testimony, the jury was charged on the defense of justification at Rountree's request.

1. Rountree contends that the trial court abused its discretion by failing to charge the jury on mutual combat and on voluntary manslaughter. He concedes that the omission of the mutual-combat instruction can be reviewed for plain error only, but contends that he preserved for ordinary appellate review his enumeration pertaining to the voluntary-manslaughter instruction. He has not,

4

however, so we review both contentions for plain error only.

Rountree argues that his objection at the charge conference to the omission of his requested instruction on voluntary manslaughter was sufficient to preserve the issue for ordinary appellate review. However, "[o]bjections at a charge conference do not suffice to preserve objections to the charge as subsequently given." *Carruth v. State*, 290 Ga. 342, 347 (6) (721 SE2d 80) (2012). In this case, Rountree made no objection when the trial court finished reading the charge to the jury. Instead, after the trial court excused the jury and asked if the parties had objections to the charge, defense counsel answered, "No, your Honor." Because of Rountree's failure to make any objection to the charge as given, both his contention relating to the trial court's omission of his requested instruction on voluntary manslaughter and his contention regarding omission of an instruction on mutual combat can be reviewed only for plain error. See OCGA § 17-8-58 (a), (b); *Davis v. State*, 312 Ga. 870, 873 (2) (866 SE2d 390) (2021) (Failure to charge on voluntary manslaughter was reviewed only for plain error where the appellant "made a written

5

request for a jury charge on voluntary manslaughter" and argued the point at the charge conference but "did not object to the omission of the charge after the trial court instructed the jury."); *Anderson v. State*, 309 Ga. 618, 622-623 (3) (847 SE2d 572) (2020) (Where the appellant "did not request the charge in writing and made no objections to the instructions ultimately given to the jury . . . , his contention relating to the failure of the trial court to give the charge in this instance is reviewed only for plain error."). And where "an alleged error regarding a jury instruction is not affirmatively waived," reversal is not authorized under plain error review unless "the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Davis*, 312 Ga. at 873-874 (2).

2. As for Rountree's contention that the trial court erred by failing to charge the jury on voluntary manslaughter, he has shown no error, much less plain error.

A person is guilty of voluntary manslaughter if he "causes the

6

death of another human being under circumstances which would otherwise be murder" and "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]" OCGA § 16-5-2 (a). "Even slight evidence showing that the victim seriously provoked the defendant requires the trial court to give a requested charge on voluntary manslaughter." *Behl v. State*, 315 Ga. 814, 816 (1) (885 SE2d 7) (2023) (citation and punctuation omitted).

In support of his argument that the evidence required the trial court to instruct the jury on voluntary manslaughter, Rountree relies primarily on his own testimony that he was fearful for the lives of his children and himself because Sandhu brought a weapon to his home. But "neither fear that someone is going to pull a weapon nor fighting are the types of provocation that demand a voluntary manslaughter charge." *Behl*, 315 Ga. at 816 (1) (citation and punctuation omitted).

Rountree also testified that Sandhu used threatening words and racial epithets. But "angry statements alone ordinarily do not

7

amount to 'serious provocation' within the meaning of OCGA § 16-5-2 (a). To put it simply, words alone generally are not sufficient provocation to excite the passion necessary to give rise to voluntary manslaughter." *Merritt v. State*, 292 Ga. 327, 331 (2) (737 SE2d 673) (2013) (citations and punctuation omitted). See also *Ramirez v. State*, 307 Ga. 550, 553 n.2 (837 SE2d 328) (2019) (stating that it is a longstanding part of Georgia's law of voluntary manslaughter that "provocation by words, threats, menaces or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder") (citation and punctuation omitted). Indeed, "words alone, regardless of the degree of their insulting nature, will not in any case justify the excitement of passion so as to reduce the crime from murder to manslaughter when the killing is done solely on account of the indignation aroused by use of opprobrious words." *Behl*, 315 Ga. at 816 (1) (citation and punctuation omitted). Cf. *Ware v. State*, 303 Ga. 847, 850 (III) (815 SE2d 837) (2018) (recognizing the "limited exception to this rule for words informing a defendant of adulterous conduct") (citation and punctuation omitted). The

threatening and insulting words that Rountree testified were used by Sandhu, no matter how menacing or offensive they were to Rountree, were still only words, regardless of Rountree's ultimate violent response.[3] See *Hudson v. State*, 308 Ga. 443, 446 (2) (a) (841 SE2d 696) (2020) ("[The victim's] use of a crude phrase, [i.e., calling the defendant a 'mother f\*\*ker' after his mother recently had died,] no matter how offensive to [the defendant], was still only words; [the defendant's] violent reaction to those words does not change the fact that they were only words.").

Accordingly, there was no evidence whatsoever of serious provocation sufficient to excite a sudden, violent, and irresistible passion in a reasonable person such that Rountree would have been entitled to a jury instruction on voluntary manslaughter. See *Hudson*, 308 Ga. at 446 (2) (a). And Rountree, therefore, has failed

---

[3] Rountree does not argue that the combined effect of Sandhu's alleged words and his possession of a weapon constituted the requisite serious provocation. Moreover, given that the fear that someone will pull a weapon is not a "type[ ] of provocation that demand[s] a voluntary manslaughter charge," *Behl*, 315 Ga. at 816 (1), we conclude that evidence of Sandhu's mere possession of a gun did not transform his alleged words into a serious provocation.

to meet the plain-error test.

3. With respect to Rountree's contention that the trial court erred by failing to instruct the jury on mutual combat, he merely "adopts" his previous "argument and citation of authority" regarding the omission of a voluntary manslaughter charge. However, Rountree never explains why it was error, much less plain error, not to charge specifically on mutual combat. Indeed, the evidence presented at trial, including that which Rountree argues in support of his claim of error in the omission of a voluntary manslaughter instruction, does not show "a willingness, a readiness, and an intention upon the part of both parties to fight" and therefore does not require a charge on mutual combat. *Tidwell v. State*, 312 Ga. 459, 463 (1) (863 SE2d 127) (2021) (citation and punctuation omitted) (holding that the trial court did not err in denying a request to charge on mutual combat where there was "no evidence of an agreement, willingness, or readiness to fight between [the victim] and any of his attackers"). See also *Williams v. State*, 309 Ga. 212, 217-218 (2) (845 SE2d 573) (2020) ("Evidence of self-defense does not

support a jury instruction on mutual combat as a basis for voluntary manslaughter."); *Venturino v. State*, 306 Ga. 391, 398 (3) (830 SE2d 110) (2019) (Appellant "points to no record evidence that he and [the victim] intended to engage in mutual combat, and we can find none."). Thus, Rountree has failed to carry his burden on appeal of showing plain error. See *Blackwell v. State*, 302 Ga. 820, 823 (2) (809 SE2d 727) (2018) ("The appellant has the burden of showing a clear or obvious error and further making an affirmative showing that the error probably did affect the outcome below.").

*Judgment affirmed. All the Justices concur.*

Decided June 21, 2023.

Murder. Houston Superior Court. Before Judge Lumsden.

*Carl A. Veline, Jr.*, for appellant.

*William M. Kendall, District Attorney, Rodrigo L. Silva, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Chelsea S. Harvey, Assistant Attorney General*, for appellee.